## UNITED STATES v. ADAMS.
### No. 14782.

United States Court of Appeals,
Fifth Circuit.
May 14, 1954.

James W. Dorsey, U. S. Atty., Atlanta, Ga., Slaton Clemmons, Rome, Ga., Charles D. Read, Jr., Atlanta, Ga., F. Douglas King, Asst. U. S. Attys., Newman, Ga., for appellant.

Nick Long, Jr., Ben Weinberg, Jr., T. J. Long, Atlanta, Ga., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES, and BORAH, Circuit Judges.

BORAH, Circuit Judge.

Brought under the Federal Tort Claims Act [1] this suit was for damages for personal injuries resulting from the capsizing of a defective pallet crate which fell with and upon plaintiff by reason of the negligence of an employee of defendant in loading said defective pallet crate on a fork-lift hoist truck.

The United States denied the charge of negligence and alleged that the injury complained of was caused solely and proximately by plaintiff's negligence in failing to exercise ordinary care for his own safety, and further that plaintiff assumed the risk and consequences of his acts when he stepped from his trailer into the raised pallet crate without attempting to ascertain if the pallet crate was securely fastened or attached to the fork-lift.

After a trial at which all of the witnesses testified in open court the district judge entered findings of fact and conclusions of law and rendered judgment for the plaintiff in the amount of $16,500.

Appealing from this judgment the United States advances seven specifications of error which we have compressed into three. Simply stated they are: (1) that the trial court erred in finding that the negligence of defendant's employee was the sole, direct, and proximate cause of plaintiff's injuries; (2) that the court erred in finding that plaintiff was not guilty of negligence; and (3) that the court erred in failing to find that plaintiff assumed the risk of his own act when he climbed into the raised pallet crate.

The uncontroverted facts are these: On the afternoon of December 22, 1950, plaintiff drove his trailer truck to the Atlanta General Depot, Conley, Georgia, to pick up some surplus materials which he had purchased, and placed his partially loaded trailer truck in a position near the loading platform of one of the Government warehouse buildings. While he was engaged in parking his trailer the materials which he had purchased were brought out of the warehouse in a pallet crate and deposited on the loading dock or platform. On parking his trailer, plaintiff climbed into the trailer body and began to rearrange his load. At the same time one Varner, an employee of appellant, brought around a fork-lift machine and picked up the loaded pallet crate from the loading dock and then, at plaintiff's direction, brought it alongside and to the front end of the trailer. As the fork-lift came alongside the trailer, the pallet crate was in a raised position on the lift and its top extended one or two feet above the side of the trailer and its bottom part was approximately ten feet from ground level. Standing in his trailer plaintiff began to unload the raised pallet crate and when it became difficult for him to reach objects near the bottom of the crate, he climbed from the trailer into the crate and continued to unload the life preservers which he had purchased. After plaintiff had thrown out a few handfuls of life preservers the crate fell from the fork-lift, causing the injuries complained of.

The pallet crate involved was a wooden structure approximately four feet square and four feet deep, with open top. The crate was constructed on three $2'' \times 4''$ timbers, flat side down. Most of the crates in use had two or three $1'' \times 4''$ boards nailed across the bottom of the three $2'' \times 4''$ timbers, thereby leaving two slots on the bottom of the crate into which the prongs of the fork-lift could be inserted when the crate was being moved. However, the crate in question did not have the $1'' \times 4''$ boards across the bottom of the $2'' \times 4''$ timbers and the same is true with respect to 20 or 25 per cent of the crates then in general use at the Atlanta General Depot. These $1'' \times 4''$ boards served a dual purpose. They were placed on the crates primarily to stabilize them and to keep the $2'' \times 4''$ timbers from warping or buckling when

---

1. 28 U.S.C. § 1346(b).

crates were stacked and to help secure them to the prongs of the fork-lift.

Plaintiff had made numerous trips to the Atlanta General Depot to pick up purchases, at least a dozen times a year for the preceding seven years and was thoroughly familiar with the pallet crates in use.

On the afternoon of the day in question he was busy arranging the load in his trailer and paid no attention to the pallet crate while it was on the loading platform or while it was being brought alongside the trailer on the fork-lift. And when he climbed into the pallet crate, he did not look to ascertain if the 1" x 4" boards were on the crate.

The foregoing facts are not disputed by either party. The district judge incorporated some of these facts in his findings and additionally found in substance the following:

(1) That plaintiff was acting pursuant to a habit and custom which he and the Government's employees had practiced for some months, whereby he would come to the Depot to obtain goods which he had purchased, and he and the Government's employees would load the same upon his tractor-trailer.

(2) That Varner on approaching the platform and causing the two horizontal arms to slide underneath the crate (often referred to as a pallet) either saw, or in the exercise of ordinary care on his part should have seen, that there was not attached at the bottom of said crate two boards, or strips.

(3) That approximately three-fourths of these crates did contain such strips and that absence of the other twenty-five per cent of the same was generally due to the fact that they had been in some way knocked off the crates, it being the duty of one of the Government's witnesses in the case, its employee, to nail such strips upon all of the crates not containing the same. The evidence shows without dispute that the crate in question did not contain such strips, which fact accounted for said crate falling from the lift.

(4) That plaintiff's body for an instant rested against one side of the crate, causing the same to overturn and fall to the ground, plaintiff first striking the ground in a sitting position and the crate falling on top of him, inflicting serious injuries.

(5) That before climbing in the said crate the plaintiff did not discover, nor in the exercise of ordinary care could he have discovered, the absence of the wooden strips at the bottom of the crate, and plaintiff assumed, as he had the right to assume, that said strips were on said crate and that said crate would not overturn because of the pressure of his body against the side of the crate as aforesaid. In other words, plaintiff was not guilty of negligence in causing his own injuries, nor in failing to anticipate or discover the negligence of defendant's employees.

(6) That the negligence of the Government's employees in failing to equip said crate with strips on the bottom of it, and the negligence of said Varner in failing to discover the absence of said strips, and in placing the crate upon his hoist-lift and putting it alongside plaintiff's truck without warning plaintiff of the absence of said strips, was the sole, direct, and proximate cause of injury and damages to plaintiff.

On the basis of these findings the district judge concluded as a matter of law: (1) that plaintiff was upon the premises of the defendant as an invitee and the duty rested upon the defendant, its agents and employees, to exercise ordinary care and diligence to avoid injury and damage to plaintiff; (2) that the duty rested upon the employees of defendant to exercise ordinary care and diligence in connection with the loading of the crate upon the fork-lift and in exercising ordinary care and diligence in taking precautions to prevent the crates from falling from the hoist-lift; and (3)

that the agents and employees of defendant having been found guilty of failure to exercise ordinary care and diligence and such negligence being the direct, sole, and proximate cause of injuries to the plaintiff, the plaintiff not having been guilty of negligence, the defendant is liable to plaintiff for the amount of his injuries.

■ Defendant strenuously urges that in acting as he did, plaintiff assumed the risk of such action; that by the use of ordinary care plaintiff could have avoided the consequences to himself caused by the furnishing to him of a defective pallet crate and that consequently Section 105–603 of the Georgia Code Annotated [2] bars his recovery. It further urges that the evidence clearly shows that the accident would not have occurred had it not been for plaintiff's own independent act in climbing into the crate where he had no business to be. These contentions, however, all involve issues of fact and what the defendant is in effect saying is that the district judge as the trier of facts made certain findings contrary to its view. We think a detailed discussion of the evidence would serve no useful purpose and shall be content to say that a careful examination of the record and an appraisement of the evidence convinces us that the findings of fact of the district judge find full and ample support in the record and that his conclusions of law were correctly arrived at for the reasons which he gave.

■■ We are not persuaded by the argument of defendant that this case is governed by Section 105–603 of the Georgia Code.[3] At the time and place in question plaintiff was an invitee upon the premises of defendant and as such defendant owed to him a duty to exercise ordinary care in keeping the premises, approaches and instrumentalities to be used in a safe condition. Jones v. Asa G.

Candler, Inc., 22 Ga.App. 717, 97 S.E. 112; Georgia Code Annotated, § 105–401. Plaintiff therefore had the right to assume that the pallet crate was in safe condition. He did not know nor in the exercise of ordinary care could he have discovered that the wooden strips were absent from the bottom of the crate and at no time did he have any reason to expect that the crate was in a dangerous and defective condition. Consequently the rule invoked by defendant has no application here for unless danger is seen, or is reasonably to be apprehended, the rule requiring one to avoid consequences of another's negligence does not apply. Central Railroad & Banking Co. v. Attaway, 90 Ga. 656, 16 S.E. 956.

Since the record furnishes no warrant for our setting aside the fact findings of the judge the judgment must be, and is,

Affirmed.

2. Section 105–603 of the Georgia Code Annotated provides: "Diligence of plaintiff.—If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained."·

3. See footnote 2.